IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CURTIS BRANDON,                      )
    Plaintiff,       )
            )
   v.                    ) Civil Action No. 02-343
            ) District Judge David S. Cercone
SGT. NAZOROVICH; BRIAN KNIGHT;) Magistrate Judge Lisa Lenihan
KOTOMSKI; MAGILL; ABRAMS;      )
GLABB; KAREN DANNER, RN;        )
MELVIN LOCKETT; PHILIP          )
JOHNSON, Superintendent;        )
CAPT. CHARLES J. SIMPSON;       )
UNNAMED FEMALE GUARD; M.J.      )
MATTHEWS; MICHAEL FERSON; LT.  )
BLAKLEY; FRED POLANDO, PA-C;   )
ROBERT S. BITNER; and THOMAS   )
L. JAMES,                       )
    Defendants.      )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants Motion for Summary Judgment (doc. no. 172) be granted.

### II. REPORT

Plaintiff, Curtis Brandon, an inmate presently incarcerated at the State Correctional Institution at Mahoney, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Named as Defendants are various present and/or former officers/employees of the Pennsylvania Department of Corrections (DOC) including: Sergeant Nazorovich; Brian Knight; Kotomski; Magill: Abrams; Glabb; Karen Danner, R.N.; Melvin Lockett; Superintendent Phillip Johnson; Capt. Charles J. Simpson; Unnamed Female Guard; M.J. Matthews; Michael Ferson; Lt.

Blakeley; Fred Polando, PA-C; Robert Bitner and Thomas L. James. In his Complaint, Plaintiff claimed that Defendants violated his rights as protected by the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution during his incarceration at the State Correctional Institution at Pittsburgh (SCIP).

## A. Relevant Procedural History

On November 26, 2003, Magistrate Judge Sensenich (now retired) filed a Report and Recommendation (doc. no. 77) that recommended the following:  that the Motion for Judgment on the Pleadings filed by Defendants Nazorovich, Kotomski, Magill, Abrams, Glabb, Lockett, Johnson, Simpson, Matthews, Ferson, Danner, Blakley, Bitner, Semetkoskey, James and Knight (doc. no. 57) be granted as to Plaintiff's retaliation claims, his free speech claim relating to his discussion of the Wimbledon championships, his 4th Amendment claim, his 5th Amendment claim, his 9th Amendment claim, his Fourteenth Amendment procedural process claim for destruction of his non-legal property, his Fourteenth Amendment claim that Defendants failed properly to investigate and consider his grievances, his due process challenge to the disciplinary proceedings, and his due process claim that Defendants filed false misconducts against him; that Plaintiff's access to court claim be dismissed pursuant to the Prison Litigation Reform Act; and Defendants' Motion for Judgment on the

Pleadings be denied as to Plaintiff's Eighth Amendment excessive force claims, his medical treatment claims and his First Amendment free speech claim based on destruction of his address list. On March 4, 2004, District Judge David S. Cercone issued an order adopting the Recommendations and adopting the Report and Recommendation as the opinion of the Court (doc. no. 88).

In the meantime, on December 2, 2003, Defendant Polando filed a Motion to Dismiss Plaintiff's Complaint pursuant to FRCP 12 (b)(6), and/or for Summary Judgment (doc. no. 78). On December 23, 2003, an Order was issued directing that Polando's motion to dismiss be treated as a motion for summary judgment (doc. no. 81). After filing several requests for extensions of time, Plaintiff was given until March 2, 2004, to file his response to Defendant Polando's Motion for Summary Judgment (doc. no. 85).

Plaintiff filed his Response on March 4, 2004 (doc. no. 87), which included a Motion to Conduct Discovery attached to the Response. On April 30, 2004, Defendant Polando filed a Motion for Protective Order to Stay Discovery (doc. no. 90). On May 5, 2004, Magistrate Judge Lenihan issued an Order granting Defendant Polando's Motion for Protective Order to Stay Discovery until a decision was rendered on the pending motion for summary judgment. On May 13, 2004, Plaintiff filed a Motion to hold the Case in Abeyance until August 7, 2004 (doc. no. 91). On May 17, 2004, Plaintiff filed a Notice of Appeal/Objections to the Magistrate's

order granting Defendant Polando's Motion for a Protective Order (doc. no. 92). Judge Cercone ordered Defendant Polando to respond to the objections (doc. no. 93).

Defendant Polando filed his Response on June 25, 2004 (doc. no. 94). On July 2, 2004, Plaintiff filed objections to the response (doc. no. 95). On July 26, 2004, Plaintiff filed another Motion to Hold Case in Abeyance (doc. no. 96). On August 3, 2004, Judge Cercone issued a Memorandum Order denying Plaintiff's appeal and affirming my orders denying Plaintiff's Appointment of Counsel and granting Defendant Polando's Motion for Stay of Discovery (doc. no. 97). On August 17, 2004, I filed a Report and Recommendation recommending that the motion for Summary Judgment filed by Defendant Polando be granted and that the motion to Hold This Case in Abeyance be denied as moot (doc. no. 98).

On September 7, 2004, Plaintiff filed a Motion to Hold the Case in Abeyance, which was granted by Judge Cercone on September 30, 2004 (doc. no. 101). On November 13, 2007, I filed an Order requiring Plaintiff to file his objections to the Report and Recommendation dated August 17, 2004 no later than January 21, 2008 and informed Plaintiff that the case would be reopened and the objections will be ruled upon for the reasons set forth in the order (doc. no. 142). Plaintiff was granted an extension and filed his objections on March 6, 2008 (doc. no. 155). Defendant Polando filed a response to Plaintiff's objections on March 21,

2008 (doc. no. 158). On April 3, 2008, Judge Cercone denied Plaintiff's objections and adopted the Report and Recommendation as the Opinion of the Court (doc. no. 162).

On June 18, 2008, the remaining Defendants filed a Motion for Summary Judgment as to the remaining three claims (doc. no. 172). On July 17, 2008, Plaintiff's first request for an extension of time to respond to the pending motion for summary judgment was granted allowing Plaintiff until July 31, 2008 to file his response. On August 21, 2008, Plaintiff filed another motion for an extension of time (doc. no. 187) and the Court scheduled a telephone conference on August 27, 2008 to discuss the issues presented therein. During the telephone conference, Plaintiff was given an extension until October 31, 2008 to Respond to the pending summary judgment motion and it was ordered that, until that date Plaintiff would be allowed to exchange his legal property every 15 days instead of the normal 30 days and that he would be allowed to spend up to 1 hour in the property room on each occasion to determine what property he needed.

On November 3, 2008, Plaintiff filed a motion asking that his case either be stayed or that he be granted another continuance because he had been placed in the restricted housing unit and allegedly did not have adequate law library access. Defendants filed a response to this motion and the Court found that Plaintiff had not been prevented from filing his response to

Defendants' Motion based on the alleged inadequacies in the RHU mini library noting further that Plaintiff's own actions put him in the RHU and that he was able to avoid such placement by obeying the institution's rules and regulations. The Court granted Plaintiff one final extension until December 31, 2008 and notified him that no further extensions would be granted (doc. no. 194).

On January 5, 2009, Plaintiff moved for another extension, which was denied by the Court on January 7, 2009. The Defendants' motion now is ripe for this Court's consideration.

## B. Standard of Review

Defendants have filed a Motion for Summary Judgment pursuant to Fed. Rule Civ. Proc. 56. Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-

moving party's case.").  The moving party bears the initial burden
of identifying evidence that demonstrates the absence of a genuine
issue of material fact.  Once that burden has been met, the non-
moving party must set forth ". . . specific facts showing that
there is a genuine issue for trial . . ." or the factual record
will be taken as presented by the moving party and judgment will
be entered as a matter of law.  Matsushita Elec. Ind. Co. v.
Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine only
if the evidence is such that a reasonable jury could return a
verdict for the non-moving party.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986).  Stated another way, "[w]here the
record taken as a whole could not lead a reasonable trier of fact
to find for the non-moving party, there is no 'genuine issue for
trial.' "  Matsushita, at 587.  The inquiry, then, involves
determining " 'whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law.' "
Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert.
denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-
52).  If a court concludes that "the evidence is merely colorable
. . . or is not significantly probative," then summary judgment
may be granted.  Anderson, 477 U.S. at 249-50.

## C. Liability under 42 U.S.C. § 1983

Plaintiff asserts liability against Defendants pursuant to 42 U.S.C. § 1983. In order to assert liability under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

The remaining issues at bar include Plaintiff's excessive force claim, his medical treatment claim against the Commonwealth Defendants and his First Amendment free speech claim based on destruction of his address list. His claims are discussed separately below.

## D. First Amendment

In his Complaint, Plaintiff alleged that Defendant Blakely ordered his search team guards to confiscate and destroy all addresses and phone numbers of females that he had in the RHU to prevent Plaintiff from communicating with women in society. In their response, Defendants attach copies of Plaintiff's grievance no. PIT-0161-CC. In this grievance, Plaintiff asserts that two non-defendant corrections officers, Swartz and Faith, entered his cell and "confiscated four (4) sheets of paper from my envelope

listing the names, addresses, and children of: Vice Chairwoman Pgh Citizen Police Review Board, Ms. Diane L. R. DePalma, Ms. Marino Binion, Ms. Irene Anderson, Ms. Kelly Hill, DeAngelia Walker, Attorney Rose Copeland Miller, LMA President Ms. Mary C. Hendrix, Ms. Courtney Weaver, Ms. Brandee Gettemy, Ms. Nancy Bellizia, Ms. Joanne Mahlmeister, Ms. Miller Lee, Ms. T. Johnson, Ms. Robinson, Ms. Krayvo" (doc. no. 172-2, p. 2). Plaintiff alleges that when he asked these officers why they were taking his address list, they told him it was per the direction of their supervisor, Defendant Blakley. A response written by defendant Blakely provides that he ordered the officers to conduct an investigatory search and that the names and addresses confiscated by the officers in the course thereof had been inadvertently discarded (doc. no. 172-2, p. 4). In response to Plaintiff's appeal, the Superintendent informed him that the Security Department would be meeting with Plaintiff to ascertain whether or not the accidentally discarded address list could be duplicated for him noting that inappropriate addresses would not be replaced (doc. no. 172-2, p. 8.

Here, the only Defendant alleged to have any involvement in this claim is Defendant Blakely. To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of

respondeat superior. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207.

As noted by Defendants, aside from Plaintiff's bald assertion, there is absolutely no evidence that the destruction of the address list was directed by defendant Blakley. The role of the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The non-moving party may not rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. <u>Matsey v. Westmoreland County</u>, 185 Fed.Appx. 126, 130, 2006 WL 1371578, 2 (3d Cir. May 19, 2006).

Here, Plaintiff's unsupported allegation that the guards told him that Blakely ordered them to destroy the address list constitutes inadmissible hearsay that is insufficient to create a material issue of disputed fact in opposition to Defendants Summary Judgment motion. *See* <u>Smith v. Kyler</u>, 295 Fed.Appx. 479,

483, 2008 WL 4516695, at *3 (3d Cir. Oct. 9, 2008); <u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957, 961 n. 1 (3d Cir. 1996) (noting that a hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion). As such, Defendants are entitled to summary judgment with respect to Plaintiff's First Amendment claim.

### E. The Eighth Amendment

Plaintiff's remaining two claims allege liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he

suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993). The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.

The Supreme Court clarified this deliberate indifference standard in <u>Farmer</u> as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be

> something society wishes to discourage, and if
> harm does result society might well wish to
> assure compensation. . . . But an official's
> failure to alleviate a significant risk that
> he should have perceived but did not, while no
> cause for commendation, cannot under our cases
> be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

## 1. Excessive Force

Plaintiff alleges that Defendants used excessive force during an incident that occurred on July 13, 2000. In his Complaint, Plaintiff avers that at 7:25 A.M. on July 13, 2000, he was talking to another inmate while he was walking back to his cell about an article in the July 8, 2000 Post Gazette Newspaper concerning the tennis championships at Wimbledon where Venus Williams beat Lindsay Davenport for the Open Championship. As they were walking, Plaintiff allegedly told the other inmate: "that was the best thing that has happened this summer and its going to happen again." When Plaintiff entered his living quarters at D-105, various inmates began hollering about an alleged assault that had occurred earlier that morning when a white guard was repeatedly stabbed by a black inmate. Believing that Plaintiff was referring to this assault rather than the Wimbledon match, Defendant Nazorovich opened Plaintiff's cell and handcuffed him and, along with guards Knight, Kotomeski, Magill and Abrams, began escorting Plaintiff off of his housing unit. As they were leaving the unit, Plaintiff began to resist the escort

and was restrained against the wall by Defendant Knight until control was restored (doc. no. 172-2, p. 10). Plaintiff was then taken to the operations center and complied with the remainder of the escort without incident.

At 8:00 A.M., Plaintiff was issued a misconduct for his statement about the staff assault and was placed in pre-hearing confinement (doc. no. 172-2, p. 10). A misconduct hearing was conducted on July 21, 2000 at which Plaintiff testified and produced an article from the newspaper referring to the Wimbledon Championships. While the hearing Examiner noted it was a close call, he found Plaintiff guilty of the charges under the some evidence standard and sentenced Plaintiff to 90 days of disciplinary time (doc. no. 172-2, p. 12).

At 8:15 A.M. that same morning, Plaintiff was examined by defendant Nurse Danner in the RHU clinic pursuant to Plaintiff's complaints that he was attacked by officers for no reason and was hit in the face and stomach (doc. no. 172-2, p. 14). Defendant Danner photographed all of the areas where Plaintiff alleged he was injured (doc. no. 172-2, p. 18). The only injuries Plaintiff exhibited at that time was a four inch welted scratch on his lower back and welted marks around his left wrist at the cuff site (doc. no. 172-2, pp. 14, 16).

On July 21, 2000, Plaintiff filed Grievance number PIT-0480-00 complaining that during the escort on July 13, 2000,

Defendants Knight, Abrams, and Glabb punched him in the face, stomach, and side while "about 25 other guards kept hollering 'you like to run your mouth' " (doc. no. 172-2, p. 20). Plaintiff further alleged that the guards carried him to the RHU with his arms hanging, which resulted in the handcuffs cutting into his wrists.

On appeal of Plaintiff's Grievance, Superintendent Philip remanded the matter back to the Grievance Officer to conduct an investigation (doc. no. 172-2, p. 22). An investigation was conducted by Security Captain Lockett, which revealed the following (doc. no. 172-2, pp. 23-24). Contrary to Plaintiff's assertion, Defendant Officer Glabb was not present on the unit at the time of the alleged assault; he was involved in helping the wounded officer during the earlier incident, making incident reports, and waiting for the arrival of the State Police. In addition, Plaintiff was not carried to the RHU, but rather walked to the Operations Building. After interviewing the appropriate personnel, including the surveillance camera observer, Lockett concluded that the force used was the result of Plaintiff's resistance and that the welts were consistent with the restraint applied when he was placed against a wall in his restraints during the escort. Lockett further noted that the photographs taken immediately following the alleged assault did not reveal any bruises or abrasions on Plaintiff's face, stomach

or side where Plaintiff contended he had been beaten. Nor did X-Rays taken of his wrist and side on July 18, 2000. Further, the lump on Plaintiff's jaw was not the result of any altercation but rather was a keloid from a healed over scar (doc. no. 172-2, p. 24). Based on this evidence, Lockett concluded that the alleged assault did not occur.

On September 7, 2000, Plaintiff's allegation of abuse concerning the July 13, 2000 events was referred to the Office of Professional Responsibility (OPR). Superintendent Philip sent the OPR Lockett's investigation report, along with witness statements and incident reports completed contemporaneously with the July 13, 2000 events. As noted by Defendants, these witness statements and incident reports are consistent with the version of events contained in the relevant misconduct and with the conclusions of Lockett's investigation (see doc. no. 172-2, pp. 30-45).

Examining the circumstances of this case under the appropriate factors, it is clear that the force applied was not so excessive as to present a cognizable Eighth Amendment claim. Plaintiff's actions in resisting the escort created a confrontation; force was applied for a reasonably short period necessary to subdue Plaintiff, *i.e.*, restraining him against the wall in order to get control. Finally, the absence of any injury where Plaintiff claims he was beaten is a substantial factor.

While there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force,[1] "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." Reyes v. Chinnici, 54 Fed. Appx. 44, 48 (3d Cir. 2002). Here, Plaintiff has failed to substantiate his excessive force claim with any evidence that he suffered any physical injury. Specifically, Plaintiff's medical records indicate that he was seen by the medical department on July 13, 2000, the day of the alleged incident. Although he complained he was beaten on his face, stomach and side, the medical department did not observe any marks or any signs of edema. Nor did X-rays taken on July 18, 2002, just five days later. While Plaintiff does not have to show serious injury to state an Eighth Amendment claim, his failure to show more than de minimis injury indicates the use of force was reasonable.

The facts at bar are similar to those presented in Reyes v. Chinnici, 54 Fed. Appx. 44, 2002 WL 31546515 (3d Cir. Nov. 18, 2002) where the Court of Appeals for the Third Circuit specifically held that the degree of a prisoner's injury can be taken into account by a federal district court in granting summary

_____

1. Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000).

judgment to a corrections officer where the degree of force used was so minor that the court safely could assume that no reasonable person could conclude that the corrections officer acted maliciously and sadistically. In <u>Reyes</u>, the prisoner was confined in the Behavioral Adjustment Unit (BAU) in the disciplinary block of the Berks County Jail, the most restricted unit in the jail. For safety concerns, BAU prisoners are handcuffed from behind whenever corrections officers move them outside of their cells. On the day of the incident at issue, Corrections Officers Chinnici was accompanying Reyes back to his cell when he pursed his lips as if to spit on him. In response, Chinnici struck Reyes' right shoulder. Reyes' shoulder swelled as a result of the blow and he requested medical attention and saw the prison nurse. The nurse advised him his shoulder would be sore for a few days and gave him some pills to take.

Reyes filed a civil rights action against Chinnici alleging that he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment when Chinnici punched him on the shoulder and neck area while he was handcuffed. The District Court granted summary judgment in favor of Defendant and Reyes appealed claiming that the District Court improperly imposed its own judgment regarding the merits of his case, rather than allowing a jury to decide the issues.

On appeal, the Court of Appeals for the Third Circuit reviewed the relevant factors in deciding whether a correctional officer used excessive force including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the response. <u>Reyes</u>, 54 Fed. Appx. at 47 (internal quotation and citation omitted). The Third Circuit concluded that:

> Contrary to Reyes' claim that the District Court avoided a material dispute on the degree of force used, the District Court viewed the evidence in the light most favorable to Reyes, stating that "[p]laintiff alleges that ... Defendant ... punched him on the shoulder and neck area while he was handcuffed." Opinion at 5. The Court then applied the above factors and concluded that Chinnici was entitled to judgment as a matter of law. The Court noted that: Reyes was a "security status" inmate; Reyes admitted to attempting to spit on Chinnici and provoked Chinnici by attempting to do so; Chinnici struck Reyes once, and not in the head or face; the purpose of Chinnici's reaction was to avoid being spit on; and the resulting injury was minor and temporary. While the District Court did not note this fact, the corrections officers then immediately placed Reyes back in his cell without further incident.

> Reyes claims that he did not actually spit on Chinnici and a reasonable jury could conclude that he did not present a threat or

security risk to Chinnici or the other officers; however, the District Court specifically stated that "Plaintiff does not suggest what appropriate alternative response was available to Defendant under the circumstances." Opinion at 8. The Court added that "[i]t certainly is unreasonable and would undermine institutional discipline to expect a corrections officer to simply allow himself to be spit upon." Id.

Reyes further focuses on the fact that each of the three officers deposed in this case admitted that punching a handcuffed prisoner can never be an acceptable use of force. This argument is not persuasive, as the District Court correctly noted, because regardless of whether Chinnici's action was appropriate, "there is no constitutional violation for 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.' " Brooks, 204 F.3d at 107 (quoting Hudson, 503 U.S. at 9-10). A single punch to avoid being spit upon is not the sort of action that is "repugnant to the conscience of mankind."

Reyes, 54 Fed. Appx. at 47.

Similarly, this Court cannot conclude that the restraint applied to Plaintiff was objectively "harmful enough" to establish a constitutional violation under the Eighth Amendment. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). The absence of any injury to the area alleged to have been beaten supports a conclusion that the force used on July 13, 2000 was *de minimis*. Therefore,

Defendants' Motion for Summary Judgment should be granted with respect to Plaintiff's excessive force claim.

## 2. Failure to Provide Medical Treatment

Plaintiff's remaining medical claim is that the Commonwealth Defendants failed to treat his injuries resulting from the alleged attack on July 13, 2000. To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for

non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

### a. Serious Medical Need

In the case at bar, the Plaintiff claims that he did not receive adequate medical care for his injuries resulting from the July 13, 2000 incident. A plaintiff alleging constitutionally inadequate medical treatment must submit medical evidence of a "serious medical need" sufficient to satisfy the objective component of the test. Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987), *cert. denied*, 485 U.S. 991 (1988). In Boring, the Court of Appeals for the Third Circuit determined that, because plaintiffs failed to produce expert testimony that their injuries were "serious," they failed to meet their burden of proof. The court explained that expert testimony would not necessarily be required in situations where the seriousness of injury or illness would be apparent to a lay person, *e.g.*, a gunshot wound. Boring, 833 F. 2d at 473 (citing City of Revere v. Massachusetts General Hosp., 463 U.S. 239 (1983)). With respect to an ulnar nerve injury and migraine headaches, however, the Court concluded that a fact finder would not be able to determine that the condition was "serious" because the need for treatment did not appear to be "acute." *Id*. With respect to a scalp condition and complaints

about dental care, the Court found that the complaints merely reflected a disagreement over the proper method of treatment. In so concluding, the Court noted that "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" *Id*. (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Finally, with respect to a prior knee injury, the Court found that the evidence did not establish an acute condition.

> As laymen, the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as "serious." In these circumstances, the district court properly required expert medical opinion and in its absence properly withdrew the issue from the jury.

Boring, 833 F.2d at 474 (citations omitted).

Here, Plaintiff has not included any evidence to whatsoever to substantiate the existence of any serious medical need with regard to the incident of July 13, 2000. The only injuries observed were welts on his back and wrists. Common sense would indicate that welts are not a serious medical need. As with the medical complaints in Boring, a lay person would not be able to conclude that Plaintiff's injuries constituted a "serious medical need" sufficient to invoke the Gamble standard without expert testimony or evidence. Thus, Plaintiff has failed to meet his burden of demonstrating a genuine issue of fact about whether

Defendants ignored a critical or escalating medical situation or that their actions posed a substantial risk of serious harm. Because evidence of this nature is required in order for an inmate's claim to succeed, Plaintiff's failure to meet this burden is fatal to his case.

## b. Deliberate Indifference

Moreover, even if the Court were to conclude that Plaintiff has demonstrated the existence of a serious medical need, a finding this Court specifically does not make, he has failed to demonstrate that Defendants were deliberately indifferent to it. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort

claim in state court but does not necessarily rise to the level of a federal constitutional violation.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 185 (3d Cir. 1993); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1978).  In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck.  He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell.  He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant.  Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work.  During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication.  Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . .. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Gamble, 427 U.S. at 107 (internal citations omitted) (emphasis added).

The Plaintiff's allegations, like Gamble's, do not state a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. The record evidence reveals that the Defendants

acted responsibly in attending to his medical needs.  Immediately following the alleged incident, Plaintiff was examined by defendant Nurse Danner in the RHU clinic who noted and photographed Plaintiff's purported injuries (doc. no. 172-2, pp. 14 and 16) and placed him on the sick call list to be seen by a Physician's Assistant.  At 9:40 A.M., Physician's Assistant McDonough examined Plaintiff noting his claims and injuries (doc. no. 172-2, p. 42).  McDonough prescribed Plaintiff Motrin and ordered x-rays of Plaintiff's wrist and side (doc. no. 172-2, p. 45).  X-rays taken on July 18, 2000 did not show any abnormality (doc. no. 172-2, p. 47).

On July 20, 2000, Plaintiff was referred by the SCIP Medical Director to a specialist for neck pain radiating into his left arm, which he had been experiencing since January of 2000, over six months before the alleged assault (doc. no. 172-2, p. 49).  He was diagnosed with degenerative disc disease of C-4, C-5 and C-6.  On August 22, 2000, he was referred to a specialist for evaluation of a cyst on his face (doc. no. 172-2, p. 52).  He and was diagnosed with a ruptured epidermal inclusion cyst and the cyst was removed on September 6, 2000 (doc. no. 172-2, p. 54).

It is evident from the record that Plaintiff received an abundance of medical care for his various physical complaints. While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests

deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." <u>Layne v. Vinzant</u>, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. <u>Young v. Quinlan</u>, 960 F.2d 351, 358 n.18 (3d Cir. 1992); <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).

Taken as true, Plaintiff's allegations and the record evidence simply do not show that Defendants acted with deliberate indifference to his serious medical needs for purposes of imposing liability under the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, there is nothing that suggests that Defendants knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Thus, Defendants are entitled to summary judgment with respect to this claim.

### III. <u>CONCLUSION</u>

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 172) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
U.S. Magistrate Judge

Date: March 12, 2009

cc: Honorable David S. Cercone
    United States District Judge

    Curtis Brandon, DV-2954
    SCI Mahanoy
    301 Morea Road
    Frackville, PA 17932